UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                      Case No. 18-14312-JKO
                                                            Chapter 11
MICHAEL PATRICK SMITH,


                    Debtor.
_____/


DEBTOR'S AMENDED DISCLOSURE STATEMENT


Furr & Cohen, P.A.
*Attorneys for the Debtor*
Aaron A. Wernick, Esq.
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
awernick@furrcohen.com

<u>DEBTOR'S AMENDED DISCLOSURE STATEMENT</u>

MICHAEL PATRICK SMITH (the "<u>Debtor</u>") provides this Amended Disclosure Statement (the "<u>Disclosure Statement</u>") to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for a creditor to arrive at a reasonably informed decision in exercising its right to abstain from voting or to vote for acceptance or rejection of the Debtor's Plan of Reorganization (the "<u>Plan</u>"). A copy of the Plan accompanies this Disclosure Statement.

The United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "<u>Court</u>") has set a hearing on confirmation of the Plan for _____ at _____, at the United States Courthouse, 299 East Broward Blvd., Courtroom 301, Fort Lauderdale, Florida 33301. You may vote on the Plan by filling out and mailing the accompanying ballot form to the Court. Your ballot must be filed on or before _____. As a creditor, your vote is important. In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan. However, you are advised that the Debtor may be afforded the right under Title 11 of the United States Code §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE BUSINESS OPERATIONS OR THE VALUE OF HIS PROPERTY) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE

STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR
ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE
STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR
DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS
SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL
DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH
ACTION AS MAY BE DEEMED APPROPRIATE.

You are urged to carefully read the contents of this Disclosure Statement before making
your decision to accept or reject the Plan. Particular attention should be directed to the provisions
of the Plan affecting or impairing your rights as they presently exist. The terms used herein have
the same meaning as in the Plan unless the context hereof requires otherwise.

Projections of results of future operations are based on the Debtor's best estimates in light
of current market conditions, past experience, analysis of general economic conditions, and other
estimates which will bear on the results.

ARTICLE I
DEFINITIONS

The Definitions set forth in Article I of the Plan are incorporated herein.

ARTICLE II
PRELIMINARY STATEMENT AND
HISTORY AND FINANCIAL CONDITION OF DEBTOR

(A) HISTORY OF DEBTOR AND SUMMARY OF REASONS FOR FILING PETITION

The Debtor filed a voluntary petition for reorganization (the "Petition") under Chapter 11
of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida
(the "Court") on April 12, 2018 (the "Petition Date"). The Debtor is unmarried and has no
dependents.

Prior to the Petition Date, the Debtor was a defendant in the following three lawsuits in the Seventeenth Judicial Circuit in and for Broward County, Florida: (1) the civil case styled *Taylor Lurie v. Michael Smith* (Case No. 16-000113); (2) the contract case styled *Morgan Stanley Smith Barney, LLC et. al. v. Michael P. Smith* (Case No. 17-015502) (the "Morgan Stanley Case"); and (3) the collection case styled *American Express Centurion Bank v. Michael Smith* (Case No. 18-001453). The first two cases concluded prior to the Petition Date, and the third case is still pending.

In the Morgan Stanley Case, on January 17, 2018, Morgan Stanley Smith Barney, LLC ("Morgan Stanley") obtained a final judgment confirming its arbitration award against the Debtor in the amount of $650,255.21, plus interest, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 2017 CACA 015502 (the "Florida State Court Action"). On March 8, 2018, Morgan Stanley moved for writ of garnishment in the Florida State Court Action against any and all tangible or intangible property of the Debtor in the possession or control of Wells Fargo Bank, N.A. (the "Wells Fargo Bank Account"). Morgan Stanley seized the balance in the Debtor's Wells Fargo Bank Account on April 2, 2018. As of the Petition Date, the Wells Fargo Bank Account contained approximately $16,901.10 (the "WF Funds"). The WF Funds are being held in escrow by Morgan Stanley and will be used to fund the Plan; specifically, as part of the distributions to unsecured creditors.

With regard to the Morgan Stanley case, the Debtor had been a stockbroker with Morgan Stanley beginning on June 21, 2013. As a condition of employment, the Debtor was offered a signing bonus of $513,600. Morgan Stanley, however, failed to live up to its bargain. Essentially, Morgan Stanley convinced the Debtor to move his substantial book of business to Morgan Stanley from his previous employer; however, Morgan Stanley created an environment whereby the Debtor was unable to service his book of business and properly facilitate the transfer of client

accounts to Morgan Stanley. During the Debtor's tenure at Morgan Stanley in 2013, and as a direct consequence of Morgan Stanley's actions, the Debtor suffered substantial financial damage vis-à-vis diminished earnings and his book of business being decimated. Morgan Stanley has repeatedly denied these allegations. The parties subsequently engaged in the FINRA arbitration process. Up until the arbitration, the Debtor attempted to settle the matter with Morgan Stanley by offering payment arrangements; however, such efforts failed. The Debtor, facing the uncertainty of arbitration, entered into a consent judgment in the approximate amount of $650K.

In sum, the Debtor's Petition was filed to reorganize the personal debt structure of the Debtor and streamline his finances, with the aim of resolving all disputes amicably in one, central forum.

The Debtor continues to operate as Debtor-in-Possession pursuant to § 1108 of the Bankruptcy Code. No trustee or creditor's committee has been appointed.

### 1. Debtor's Income

The Debtor is currently employed as a parking valet. As of the Petition Date, his monthly gross income totaled approximately $4,057.91. The Debtor's gross income in 2016 was approximately $9,668; $35,000 in 2017 (when the Debtor worked in the construction industry); and his gross income from January 1, 2018 through April 12, 2018 was approximately $12,000 (as a parking valet). Post-petition, the Debtor's income (as a parking valet) was approximately $16,307 from April 2018 through December 2018. A projection of post-confirmation income and expenses is attached as Exhibit "C".

### 2. Real Property

As of the Petition Date, the Debtor owned the real property located at 301 North Ocean Boulevard, #402, Pompano Beach, Florida 33062 (the "Homestead Property"). The Debtor

estimated the value of the Homestead Property was $140,120. As of the Petition Date, there were no liens on the Homestead Property.

(B) <u>SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE</u>

**1.  Retention of Professionals**

The Debtor, through counsel, filed an application to employ Aaron A. Wernick, Esq. and the law firm of Furr and Cohen, P.A. as his general bankruptcy counsel on May 2, 2018 [ECF 12], which was approved by Court Order on June 15, 2018 [ECF 24].

**2.  Meeting of Creditors / Committee of Creditors**

The 341 Meeting of Creditors was conducted on May 10, 2018 [ECF 8].

**3.  Stipulation with Morgan Stanley**

Morgan Stanley and the Debtor entered into a *Stipulation with Respect to Garnished Wells Fargo, N.A. Bank Account* (the "<u>MSSB Stipulation</u>") on April 25, 2018, whereby the parties agreed as follows: (a) Morgan Stanley will file a Request to Dissolve the Writ of Garnishment against the Debtor currently pending with Wells Fargo Bank, N.A. ("<u>Wells Fargo</u>"), in order to release the WF Funds currently garnished in the Wells Fargo Bank Account to the control of counsel for the Debtor; (b) counsel for the Debtor will place the WF Funds in an escrow account (the "Escrow Account"); (c) the WF Funds in the Escrow Account shall be used in the Chapter 11 Case only to fund an effective date payment to general unsecured creditors under a confirmed Plan; (d) if no Plan is ultimately confirmed, the WF Funds will be turned over to Morgan Stanley; and (e) the MSSB Stipulation and agreement is contingent upon Bankruptcy Court approval, which the Debtor agrees to obtain. The Debtor filed a motion to approve the MSSB Stipulation on May 8, 2018 [ECF 15] that was approved by Court Order on June 4, 2018 [ECF 16].

**4.  Valuation of Mercedes**

The Debtor filed the *Motion to Value and Determine Secured Status of Lien on Personal Property (2008 Mercedes ML350)* (the "Mercedes Valuation Motion") on November 21, 2018 [ECF 40] requesting the Court to determine that Gateway One Lending's ("Gateway") secured claim relating to the 2008 Mercedes ML350 (VIN#: 4JGBB86E08A328489) with approximately 119,000 miles as of the Petition Date (the "Mercedes") is $5,925 and that the remainder deficiency portion of Gateway's claim, estimated at $2,525.19, be treated as a general unsecured claim. The hearing on the Mercedes Valuation Motion occurred on January 9, 2019 and the motion was granted.

## (C) SOURCE OF FINANCIAL INFORMATION

The source of financial information for this Disclosure Statement and the accompanying Plan is from the Debtor and his monthly operating reports. The financial information has not been audited.

## ARTICLE III
## DEBTOR'S OPERATION AND STRUCTURE
### (A) SYNOPSIS OF OPERATION IN CHAPTER 11

During the course of this Chapter 11 bankruptcy proceeding, the Debtor has maintained steady employment, first as a labor project manager and then as a parking valet. The Debtor has maintained adequate insurance, filed all monthly operating reports, and is current on all U.S. Trustee fees.

### (B) PROJECTED PROFITABILITY AND FEASIBILITY OF PLAN

The Debtor believes that there is minimal risk to creditors as to completion of the Plan. All payments as provided for in the Plan shall be financed by the Debtor's cash on hand, the WF Funds, along with the Debtor's income from his employment. Coupled with the restructured debt terms described in this Disclosure Statement and with positive future projections of cash flow, the

Debtor believes that the payment plans proposed in this Disclosure Statement are feasible. Monthly net cash flows, before and after debt service, are sufficient to fund the existing Plan. For further detail of cash flows and a breakdown of projected income and expenses for the Debtor, see attached **Exhibit "C",** *Projections of Cash Flow for Post-Confirmation Period*. Pursuant to section 1129(a)(15) of the Bankruptcy Code, the value of the property to be distributed under the Plan is not less than the projected disposable income of the debtor during the 5-year period commencing on the Effective Date. See attached **Exhibit "C"**.

(C) EXECUTORY CONTRACTS

Any and all executory contracts and unexpired leases of the Debtor not expressly assumed herein or assumed prior to the Confirmation Date, or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected.

The following executory contracts and unexpired leases of the Debtor are expressly assumed: NONE.

(D) OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS

Pursuant to the Plan, the Debtor may object to any scheduled claim or filed proof of claim. Such an objection shall preclude the consideration of any claims as "allowed" for the purposes of timely distribution in accordance with the Plan. The deadline to file non-governmental claims was August 8, 2018. At the time of the filing of this Disclosure Statement, the Debtor does not intend to file any objections to claims.

The Debtor is still analyzing claims to determine whether further objections will be filed. All indebtedness scheduled by the Debtor, which was not scheduled as disputed, contingent or unliquidated, or any indebtedness set forth in a properly executed and filed proof of claim, shall be deemed an allowed claim unless the same is objected to, and the objection thereto is sustained

8

by the Court.

THE DEBTOR RESERVES HIS RIGHTS TO FILE FURTHER OBJECTIONS TO CLAIMS, SCHEDULED AND NON-SCHEDULED, AS WELL AS OBJECTIONS TO ADMINISTRATIVE EXPENSES, AND/OR SEEK RECONSIDERATION OF THE ALLOWANCE OF ANY CLAIM. The deadline to file objections to claims will be established by this Court's order setting a confirmation hearing.

The Debtor submits that there are no preference or voidable transfer actions that are either collectible or that can be cost-effectively pursued. Therefore, as of the filing of this Disclosure Statement, the Debtor does not anticipate filing any preference or fraudulent conveyance actions.

ARTICLE IV
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 General. Unless otherwise specified, all payments under this Plan shall commence on the first of the month following the Effective Date, which will be the fifteenth day after the date on which the Bankruptcy Court enters a final order of confirmation on its docket, and in the event that such date is a Saturday, Sunday or legal holiday, the next day thereafter.

4.2 Administrative Expense Claims. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a final order allowing any such administrative claim, whichever is later, or (b) upon such other terms as may be agreed to between the Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) Debtor's counsel and other estate professionals, who shall final a Fee Application by the deadline set by the Court, approximately 21 days before the plan confirmation hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to

Court approval. All administrative expenses will be paid from the Debtor's cash on hand, exempt funds or assets, and/or future net revenue from the Debtor's employment or businesses,

The administrative expense of attorney's fees and costs of Debtor's counsel are estimated to be approximately $4,800 above what has been paid to Aaron A. Wernick, Esq. of Furr & Cohen, P.A. as of the filing of this Disclosure Statement.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, shall be filed with the Court and served upon the Debtor at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Court. Except as provided herein, any Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

4.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

4.4 <u>Priority Tax Claims</u>. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code. The IRS filed POC No. 1-2 on May 18, 2018 and claimed the sum of $5,037.93 as priority based on 2016 and 2017 income taxes; however, $5,000 of the claim was based on the fact that the 2017 return had not been filed as of May 2018. The Debtor was on extension and subsequently filed his return; therefore, the Debtor believes that the IRS will amend its claim to reflect a balance owed of only $37.93.

Allowed Priority Tax Claimholders shall receive deferred cash payments over a period not to exceed five (5) years following from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest. The Debtor may pay any or all amount of said claim before such date and not incur a prepayment penalty.

4.5 <u>Classification of Claims</u>.

**<u>Class 1 – Allowed Secured Claim of Gateway relating to 2008 Mercedes</u>**:

(a)    <u>Description</u>: Class 1 consists of the secured claim of Gateway, which is secured by the 2008 Mercedes that has approximately 119,000 miles.  As of the Petition Date, the Debtor estimated on his Schedules that Gateway's claim with respect to the 2008 Mercedes totaled $8,845.91. The Debtor estimated the value of the 2008 Mercedes is $5,925.00 as determined by Black Book[1]. Gateway filed POC No. 3 in the amount of $8,450.19.

(b)    <u>Treatment</u>. Gateway's Claim relating to the 2008 Mercedes shall be bifurcated into an Allowed Secured Claim in the approximate amount of $5,925.00[2] (the "<u>Secured Class 1 Amount</u>") with the balance of $2,525.19 to be treated as a general unsecured claim. Except to the extent that the holder of the Allowed Class 1 Claim has been paid prior to the Effective Date or agrees to a different treatment, the Class 1 Claimholder shall be paid the Secured Class 1 Amount over a period of 5 years, fully amortized, at an annual interest rate of 5.5%, for a monthly payment of $113.17, commencing on the first of the month following the Effective Date.

There will be no prepayment penalty in the event the Debtor pays all or a portion of the unpaid principal balance before the maturity date. Except as modified herein, the remaining terms of the prepetition loan documents will remain unchanged. As long as the Debtor remains current on his Class 1 Plan payments, Gateway will report to the three credit bureaus that the loan relating to the 2008 Mercedes is current within 90 days of the Effective Date. Within 60 days of the Effective Date, Gateway shall commence the sending of monthly statements directly to the Reorganized Debtor which reflect the restructured unpaid balance amount as well as the adjusted

---

[1]    This Court granted the Debtor's *Motion to Value* [ECF 40], which sought to value the 2008 Mercedes at $5,925.00, at a hearing on January 9, 2019.

[2]    The net balance; i.e., the balance as of the Effective Date, accounting for all post-petition payments, will be the actual amount that is amortized over 5 years.

interest rate.

       (c)    <u>Impairment</u>: The Class 1 Claim is Impaired and the Class 1 Claimholder is entitled to vote to accept or reject the Plan.

**Class 2 – Allowed General Unsecured Claims**:

       (a)    <u>Description</u>: Class 2 consists of the Allowed Claims of the general unsecured creditors. As reflected in the list of general unsecured creditors attached as **Exhibit "A"** and listed in this subsection, the Debtor estimates the aggregate amount of Class 2 general unsecured claims totals $671,242.31.

       (b)    <u>Treatment</u>: As provided in additional detail in the Liquidation Analysis, attached as **Exhibit "B"**, the Debtor estimates that if this case were converted to a Chapter 7 case, the holders of Class 2 Claims would not receive any distribution. If the Debtor's Plan is confirmed, however, the Allowed general unsecured claimants shall share in a total distribution of $46,901.10 (which consists of the $16,901.10 in the Debtor's Wells Fargo Bank Account that was garnished by Morgan Stanley prior to the Petition Date, plus $500 per month for 60 months, for a total of $46,901.10).[3] The WF Funds in the amount of $16,901.10 shall be distributed *pro rata* to the Class 2 Claimholders as soon as reasonably practicable upon the Effective Date of the Plan, but no later than 30 days after the Effective Date. In addition, the Debtor shall distribute $500 each month for 60 months, commencing on the first of the month after the Effective Date, *pro rata* to the Class 2 Claimholders.

---

[3] The list of unsecured creditors assumes that there will be no objections to claims. The Debtor reserves the right to amend the list of creditors if necessary. The total amount distributed to general unsecured creditors ($46,901.10) will remain the same regardless of whether creditors are added or removed from Exhibit "A" or whether any creditor's allowed claim is increased or decreased.

| Claimant Name | Claim Amount | Payout Amount from the WF Funds | Total Payout from the Monthly Payments | **Total Payout** |
|---|---|---|---|---|
| American Express Centurion Bank | $15,461.91 | $389.31 | $691.04 | **$1,080.36** |
| FINRA | $3,000.00 | $75.54 | $134.08 | **$209.62** |
| Gateway One Lending | $2,525.19 | $63.58 | $112.86 | **$176.44** |
| Morgan Stanley Smith Barney, LLC | $650,255.21 | $16,372.67 | $29,062.02 | **$45,434.69** |

The distributions to the Class 2 Claimholders described herein shall be in full satisfaction, settlement, release and discharge of their respective Allowed Class 2 Claims.

(c)     Impairment: The Class 2 Claims are Impaired and any of the Class 2 Claimholders are entitled to vote to accept or reject the Plan.

**Class 3 – Allowed Equity Interests:**

(a)     Description: Class 3 consists of the Debtor's equity interests in assets of the estate, which are retained under the Plan.

(b)     Treatment: All property of the estate shall re-vest in the Reorganized Debtor, Michael Patrick Smith.

(c)     Impairment: Class 3 is unimpaired and therefore holders of Allowed equity interests are conclusively presumed to have accepted the Plan, pursuant to 11 U.S.C. § 1126(f).

ARTICLE V
CLAIMANTS AND IMPAIRED INTEREST HOLDERS

Claimants and interest holders entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court. According to the Plan, Classes 1 and 2 are "impaired" classes within the meaning of Section 1124 of the Bankruptcy Code. These classes, accordingly, must vote to accept the Plan in order for the Plan to be confirmed without a "cram down". A claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.

A ballot to be completed by the holders of claims and/or interests is included herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Court and made binding upon all claimants and interest holders if (a) with respect to impaired classes of claimants, the Plan is accepted by holders of at least two-thirds in amount and more than one-half in number of claims in each such class voting upon the Plan and (b) with respect to classes of interest holders, if the Plan is accepted by the holders of at least two-thirds in amount of the allowed interests of such class held by holders of such interests. In the event the requisite acceptances are not obtained, the Court may, nevertheless, confirm the Plan if it finds pursuant to Section 1129 of the Bankruptcy Code that the Plan does not discriminate unfairly and accords fair and equitable treatment to any impaired class that does not accept the Plan.

ARTICLE VI
ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS

All payments as provided for in the Debtor's Plan shall be financed by the Debtor's cash on hand along with the Debtor's income from his employment, unless otherwise stated.

The Debtor believes that this Plan is in the best interest of creditors. As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the assets of the Debtor by a duly appointed or elected trustee. In the event of a liquidation under Chapter 7, the following is likely to occur:

(a) An additional tier of administrative expenses under Section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include Trustee's commissions and fees to the Trustee's attorneys, accountants, and other professionals likely to be retained by him or her for the purposes of liquidating the assets of the Debtor; and

(b) The Estate and its creditors would not realize the benefit of any future income generated from the continuation of the Debtor's employment.

Predicated upon the foregoing, it is the Debtor's opinion that the liquidation value of the Debtor's assets would be insufficient to make payments to any class of creditors other than the secured creditors, leaving no monies available for the claims of any other classes of creditors. The Liquidation Analysis which demonstrates the financial consequences of a conversion is attached as **Exhibit "B".**

## ARTICLE VII
## RISK ANALYSIS

The Debtor believes there is minimal risk to the creditors if the Plan is confirmed, as the cash flow from the Debtor's employment is sufficient to service the restructured debt. The on-going operation of the Debtor's businesses will generate the most funds for payment to creditors. A statement of projected cash flows is attached as **Exhibit "C.**

## ARTICLE VIII
## POST-CONFIRMATION REORGANIZED DEBTORS' STRUCTURE

Upon the Effective Date, the Debtor shall continue his employment as a parking valet. The Debtor shall retain all of his assets, with all assets re-vesting in the Reorganized Debtor.

ARTICLE IX
CONFIRMATION BY "CRAM DOWN"

The Debtor reserves the right, in the event that impaired classes reject the Plan, to seek confirmation of the Plan by "cram down" if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed "fair and equitable" if it provides (i) that each holder of a secured claim retains its lien and receives deferred cash payments totaling at least the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to the lien, and (ii) that each holder of an unsecured claim receives property of a value equal to the allowed amount of its claim, or no holder of a junior claim receives or retains any property on account of such claim.

ARTICLE X
MISCELLANEOUS PROVISIONS

10.1    Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a final order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

10.2    At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Debtor files a modification with the Court, the Plan, as modified, shall become an amended Plan.

10.3    At any time after the Confirmation Date, and before substantial consummation of the Plan, the Debtor may modify the Plan with permission of the Court so that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become an amended Plan.

10.4    After the Confirmation Date, the Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

ARTICLE XI
DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, the Debtor is required to pay the appropriate sums required pursuant to Section 1930(a)(6) on the Effective Date. The Debtor must also file all monthly operating reports for the relevant periods indicating the cash disbursements for the relevant period.

With respect to post-confirmation periods, the Reorganized Debtor will pay the United States Trustee fees for post-confirmation periods based upon all post-Confirmation disbursements made by the Reorganized Debtor, and will also file all post-confirmation quarterly operating reports with the Court, until the earlier of the closing of the case or upon dismissal or conversion of the case.

ARTICLE XII
EFFECT OF CONFIRMATION OF PLAN

The Debtor may, after confirmation, seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal

17

income tax returns. Such a request may be granted only upon notice and a hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required under the Plan, or otherwise for cause, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. §350(b), and the Court may then grant the Debtor his discharge, pursuant to 11 U.S.C. §1141(d)(5). This paragraph only preserves the Debtor's right to seek the relief discussed above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtor after the Confirmation Date.

The Debtor will be granted a discharge upon completion of all payments under the Plan, unless after notice and a hearing the court orders otherwise for cause and allows for an early discharge, per 11 U.S.C. §1141(5)(A), which discharges the Debtor from any debt that arose before the Confirmation Date.

ARTICLE XIII
TAX IMPLICATIONS OF THE PLAN

The Debtor believes that confirmation of the Plan will not have any adverse tax implications for the Estate. *The Debtor strongly urges that each creditor consult with its own tax advisor regarding the Federal, state, local and other tax consequences which the implementation of the Plan will have on them.*

ARTICLE XIV
CONCLUSION

Under the Plan, all creditors and interest holders of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in this Plan are fair and afford all claimants and interest holders equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS AND

INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.

This Disclosure Statement is respectfully submitted:

_____
MICHAEL PATRICK SMITH
DEBTOR IN POSSESSION

Furr Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Aaron A. Wernick*
    Aaron A. Wernick, Esq.
    Florida Bar No. 14059
    awernick@furrcohen.com

INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.


This Disclosure Statement is respectfully submitted:


_____
MICHAEL PATRICK SMITH
DEBTOR IN POSSESSION


Furr Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Aaron A. Wernick*
    Aaron A. Wernick, Esq.
    Florida Bar No. 14059
    awernick@furrcohen.com

19

**EXHIBIT A**
**LIST OF UNSECURED CLAIMS**

| POC # | Claimant Name and Address | Acct. # (Last 4 digits) | Description of Claim | Claim Amount | Payout Amount from the WF Funds | Monthly payment | Total Payout from the Monthly Payments | Total Payout |
|---|---|---|---|---|---|---|---|---|
| 2 | American Express Centurion Bank Becket and Lee LLP PO Box 3001, Malvern, PA 19355 | 3000 | Consumer Goods and Services / Credit Card | $15,461.91 | $389.31 | $11.52 | $691.04 | $1,080.36 |
| 3 | FINRA 9509 Key West Avenue Rockville, MD 20850 | 7823 | Arbitration Fees | $3,000.00 | $75.54 | $2.23 | $134.08 | $209.62 |
| 3 | Gateway One Lending 160 North Riverview Drive #100 Anaheim, CA 92808 | 3890 / 4998 | Undersecured Deficiency Portion of Secured Claim | $2,525.19 | $63.58 | $1.88 | $112.86 | $176.44 |
| 4 | Morgan Stanley Smith Barney, LLC 99 Park Avenue, Suite 320, New York, NY 10016 | 3476 | Final Judgment from FINRA Case | $650,255.21 | $16,372.67 | $484.37 | $29,062.02 | $45,434.69 |
| | TOTAL: | | | $671,242.31 | $16,901.10 | $500.00 | $30,000.00 | $46,901.10 |

EXHIBIT B
LIQUIDATION ANALYSIS

| Property | Estimated Value of Property | Amount of Encumbrances | Specific Laws that allow the Exemption | Amount of Claimed Exemption | Non-Exempt Liquidation Value Less Liens |
|---|---|---|---|---|---|
| Real Property | | | | | |
| Homestead Property - 301 N. Ocean Blvd. #402, Pompano Beach, Florida 33062 | $140,120.00 | $0.00 | Fla. Const. art. X, section 4(a)(1); Fla. Stat. 222.01 and 222.02 | $140,120.00 | $0.00 |
| Vehicles | | | | | |
| 2008 Mercedes ML350 with approx. 119,000 miles | $5,925.00 | $8,845.91 | Fla. Stat. 222.25(1) | $1,000.00 | $0.00 |
| Household Goods/Furnishings/Electronics | $1,000.00 | $0.00 | | $0.00 | $1,000.00 |
| Clothing (of no value to anyone other than the Debtor) | $0.00 | $0.00 | | $0.00 | $0.00 |
| Cash & Bank Accounts | | | | | |
| DIP account | $732.59 | $0.00 | Fla. Const. art. X, section 4(a)(2) | $1,000.00 | $0.00 |
| Tax Refund for 2015 | $281.00 | $0.00 | | $0.00 | $281.00 |
| Loyal American Term Life Insurance Policy No. 439L (The beneficiary is the Debtor's father, Michael L. Smith) | $0.00 | $0.00 | | $0.00 | $0.00 |
| **TOTAL ALL PROPERTY** | **$148,058.59** | **$8,845.91** | | **$142,120.00** | **$1,281.00** |

| Liquidation Related Expenses | Chapter 7 - Expenses | Chapter 11 - Expenses |
|---|---|---|
| Chapter 7 Trustee Fee - 10% of liquidated value of assets.  See 11 U.S.C. 326 | $593.86 | $0.00 |
| Chapter 7 Professional Fees - Estimated | $10,000.00 | $0.00 |
| Chapter 11 Professional Fees - Estimated | $5,000.00 | $15,000.00 |
| **TOTAL:** | $15,593.86 | $15,000.00 |

| | Chapter 7 | Chapter 11 |
|---|---|---|
| **Estimated Distribution to Holders of Allowed General Unsecured Claims** | $0.00 | Pro Rata Distribution of $46,901.10 |

1.  The values listed are based on the Debtor's best estimates of the liquidated value of his assets.

2.  Chapter 7 Trustee Fees are calculated in accordance with 11 U.S.C. § 326, which provides:  "In a case under chapter 7 or 11, the court may allow reasonable compensation . . . of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000.00 or less, 10 percent on any amount in excess of $5,000.00 but not in excess of $50,000.00, 5 percent on any amount in excess of $50,000.00 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

3.  Chapter 7 Administrative Costs are difficult to qualify as they vary based on whether the Trustee employs professionals which could include attorneys, accountants, appraisers and liquidators.  Therefore, this value is arbitrary and for use in this analysis only.

**Projections of Monthly Cash Flows for Post-Confirmation Period**
**Exhibit "C"**

| | | |
|---|---|---|
| Income | | $3,075.00 |
| | **TOTAL:** | **$3,075.00** |

Household Expenses

| | |
|---|---|
| Real Estate Taxes | $205.00 |
| Homeowner/Condominuim Association Dues | $250.33 |
| Utilities | $75.00 |
| Household/food/clothing | $1,015.00 |
| Medical and Dental | $125.00 |
| Transportation (Gas, Maintenance) | $414.00 |
| Car insurance | $151.00 |
| Salary taxes | $30.75 |

Plan Payments

| | | |
|---|---|---|
| Class 1 - Gateway (Loan on Mercedes) | | $113.17 |
| Class 2 -Unsecured Claims [The $16,901.10 payment will be paid from the WF Funds no more than 30 days from the Effective Date] | | $500.00 |
| | **TOTAL:** | **$2,879.25** |

| | |
|---|---|
| Disposable Income | $195.75 |